UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------x
SHANNON GRUICH and FRANK         :     CIVIL ACTION NO.
GRUICH, III                                       :
                                                         :
          Plaintiffs,                              :     JUDGE
                                                         :
                                                         :
vs.                                                   :     MAGISTRATE JUDGE
                                                         :
ASM GLOBAL LC, LLC,                  :
                                                         :     JURY TRIAL DEMANDED
          Defendant.                           :
---------------------------------------------------x

## COMPLAINT

Plaintiffs, SHANNON GRUICH and FRANK GRUICH, III, by and through their undersigned counsel, hereby file this original Complaint and sue ASM GLOBAL LC, LLC (hereinafter "Defendant" or "ASM"), for declaratory relief, compensatory and nominal damages,[1] including actual damages for economic loss, and attorneys' fees and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12182 *et seq.* and the Louisiana Statutes on the Rights of Persons with Disabilities at La. R.S. §46:1951 *et seq.* Mr. Gruich brings his claim for associational discrimination under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(E). Accordingly, Plaintiffs allege:

## JURISDICTION AND PARTIES

1.  This is an action for relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter referred to as "Americans with Disabilities Act" or

---

[1] With regards to Plaintiffs' request for nominal damages, it is Plaintiffs' position that an award of nominal damages would confer significant civil rights to the public, as a judgment in their favor against Defendant, regardless of the amount, would deter Defendant from discriminating against individuals with disabilities who rely on service animals in the future.

1

"ADA") and the Louisiana Statutes on the Rights of Persons with Disabilities at La. R.S. §46:1951 *et seq.*, (hereafter "LSRPD").

2. This Court is vested with original jurisdiction over the Federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367, as such claims arise out of the same case or controversy as the Federal claims.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property at issue in this lawsuit is located in the Parish of Orleans, in the Eastern District of Louisiana.

4. Plaintiffs, Shannon Gruich and Frank Gruich, III, are residents of Biloxi, Mississippi.

5. Ms. Gruich is a qualified individual with a disability under the ADA. Ms. Gruich is legally blind and hard of hearing. Due to her disabilities, Ms. Gruich is substantially impaired in several major life activities, including hearing and seeing.

6. Ms. Gruich relies on a service animal that is individually trained to perform tasks for her, within the meaning of 28 C.F.R. §36.104. Specifically, Ms. Gruich's service animal is a dog that has been individually trained to assist Ms. Gruich's vision and hearing disabilities.

7. Ms. Gruich is married to Mr. Gruich. Mr. Gruich is not disabled. However, Ms. Gruich accompanied Mr. Gruich to the Superdome on December 27, 2021.

8. Upon information and belief, ASM is a limited liability company doing business in Orleans Parish, Louisiana.

9. Upon information and belief, ASM is domiciled at 501 Louisiana Avenue, Baton Rouge, Louisiana 70802.

10. Upon information and belief, ASM operates the programs, services, and activities which are offered at the Superdome, located at 1500 Sugar Bowl Drive, New Orleans, LA 70112 (hereinafter "Superdome" or "the Property").

11. Upon information and belief, during Saints games and their associated events, ASM operates the programs, services, and accommodations offered at the Superdome.

12. Upon information and belief, ASM is responsible for violations of Title III of the ADA at the Property that deal with the conduct of the event staff.

13. ASM is obligated to comply with the ADA.

14. The Property has historically been operated by an entity known as "SMG." In approximately 2019, SMG completed a merger with ASM. As such, all of the knowledge, experience, and notice attributable to SMG is imputed to ASM.

15. ASM had explicit notice of its obligations under the ADA to accommodate patrons with disabilities. To the extent ASM previously unaware of its obligation to accommodate, a Judgment was entered against SMG, a predecessor of ASM, after a trial on the merits by the Honorable Judge Susie Morgan on July 7, 2019. *See Smith v. Board of Commissioners of the Louisiana Stadium and Exposition District et al*, Civ. No. 17-7267 (E.D. La. filed July 28, 2017).

16. ASM was also made aware of its obligations under the ADA though *Simmons v. Kyle France, et al.*, No. 20-cv-415 (E.D. La. Filed February 5, 2020). Mr. Simmons used a wheelchair and alleged that SMG/ASM failed to accommodate him during the Bayou Classic Battle of the Bands. The action ended with a confidential settlement.

17. Thus, despite the fact that ASM and/or its predecessor has been subject to at least two lawsuits alleging violations of the ADA, as is evidenced by the factual narrative below, it has still failed to ensure that patrons with disabilities are accommodated under the ADA when they visit the Superdome.

## FACTUAL STATEMENT

18. Plaintiffs reallege and reaver Paragraphs 1 - 17 as if they were expressly restated herein.

19. The Property is a place of public accommodation, subject to the ADA, generally located at 1500 Sugar Bowl Drive, New Orleans, LA 70112.

20. The Superdome is an events and exhibition venue, located in New Orleans, Louisiana.

21. The Superdome is used for hosting sporting events and live entertainment events.

22. The Superdome hosts home games for the New Orleans Saints football team.

23. Mr. Gruich's father gifted the Plaintiffs tickets to the December 27, 2021, Dolphins/Saints game.

24. The National Football League's current scheduling rotation makes it so that the Dolphins play in the Superdome once every eight (8) years – a rare occasion.

25. Mr. Gruich is a self-described "Miami Dolphins fanatic" so he and his wife were extremely excited to attend Dolphins/Saints game at the Superdome.

26. When Plaintiffs arrived at the Superdome, they experienced no problems entering with Ms. Gruich's service animal. They found their seats and enjoyed the first half of the game.

27. Just before halftime, Plaintiffs asked an usher where they could take the service animal to relieve itself. The usher directed them down a ramp. When they got to the bottom of the ramp, a separate usher directed them to go outside to allow the animal to relive itself.

28. After the service animal relieved itself, Plaintiffs attempted to re-enter the Superdome, but were denied re-entry. To no avail, Plaintiffs explained that they only briefly exited to allow the animal to relieve itself.

29. Plaintiffs had left some personal items at their seats and asked to be able to retrieve those items. This request was denied. Ms. Gruich then offered to go with back inside with an escort which was denied. Plaintiffs were never able to retrieve their personal items.

30. While Mr. Gruich was pleading their case to a group of five security guards, one of them (an overweight African American man) removed his shirt and moved towards Mr. Gruich in a menacing manner as if to attack Mr. Gruich. The security guard's co-workers intervened to hold the large security guard back.

31. Ms. Gruich asked to see a supervisor and after about a thirty-minute wait, a supervisor arrived. She was an African American female with long braided hair. The supervisor did not allow Plaintiffs to re-enter the Superdome.

32. Given the numerous failed attempts to re-enter, Plaintiffs left without being able to watch the second half of the Dolphins/Saints game or retrieve their personal items.

33. Plaintiffs were very distraught and upset over this incident.

34. Plaintiffs plan to and will visit the Property in the future as patrons but fear they will again be unable to reenter the Superdome with Ms. Gruich's service animal if they need to leave so the animal can relieve itself.

35. Plaintiffs intend to return to the Superdome when the Miami Dolphins return in eight (8) years or when the Miami Dolphins play a preseason game in the Superdome as they have done in 2007, 2008, 2009, 2019, 2020 (scheduled, but canceled due to COVID-19).

36. Plaintiffs are fans of the NFL and intend to return to the Superdome to watch other football games that might not involve the Miami Dolphins.

### COUNT I: VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT AS TO MS. GRUICH

37. Ms. Gruich repeats and realleges all preceding paragraphs in support of her claim.

38. At all times relevant to this action, Title III of the ADA has been in full force and effect and has applied to Defendant's conduct.

39. Title III of the ADA states, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *See* 42 U.S.C. § 12132.

40. At all times relevant to this action, Ms. Gruich was an individual with a disability within the meaning of the ADA and had substantial limitations to the major life activities of hearing and seeing, as defined by 42 U.S.C. § 12132.

41. Pursuant to 28 C.F.R. § 36.302(c)(1), "a public accommodation shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability."

42. Upon information and belief, Defendant has a policy that prohibits reentry to the Superdome during Saints games. By refusing to modify its policy and permit Ms. Gruich to reenter the Superdome after relieving her service dog, Defendant violated the ADA.

43. Defendant's employees and/or agents discriminated against Ms. Gruich by excluding her from the accommodations of a place of public accommodation, i.e., access to the Superdome. Defendant's employees and/or agents excluded, denied benefits to, and otherwise subjected Ms. Gruich to discrimination on the basis of her status as a person with a disability with a service animal by refusing to let Ms. Gruich reenter the Superdome with her service animal after going outside so that it could relieve itself.

44. Defendant's employees and/or agents were aware of the fact that Ms. Gruich's dog was a service animal, as she had clearly communicated the service animal's role to them.

45. Pursuant to 28 C.F.R. §36.302(c)(2)(ii) and La. R.S. §46:1953(D)(1)(b), a service dog must be housebroken. Ms. Gruich was trying to prevent any accidents by her service dog by taking it outside to relieve itself. If Ms. Gruich's service dog had had an accident in the Superdome, she would have likely been asked to leave.

46. Nonetheless, Ms. Gruich was not permitted to reenter the Superdome after taking her service dog outside to relieve itself.

47. Under the ADA, a public accommodation is required to modify its policies, practices, or procedures to mitigate any disparate impact upon persons with disabilities. 28 CFR § 36.302(a).

48. Upon information and belief, modification of the policies, practices, and/or procedures of ASM would provide Ms. Gruich with an equal opportunity to participate in, or benefit from, the goods, services, and accommodations which ASM offers to the general public.

49. At the December 27, 2022 Dolphins/Saints game, Ms. Gruich was further discriminated against by being subjected to the humiliation, fear, and anxiety of not being able to reenter the Superdome so that she could watch the game and/or retrieve her personal items.

50. Ms. Gruich has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Ms. Gruich is entitled to have her reasonable attorneys' fees, costs, and expenses paid by ASM pursuant to 42 U.S.C. § 12205.

### COUNT II: VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT AS TO MR. GRUICH

51. Mr. Gruich repeats and realleges all preceding paragraphs in support of his claim.

52. Mr. Gruich brings his claim under Title III of the ADA for associational discrimination.

53. Title III of the ADA prohibits associational discrimination. Pursuant to 42 USC 12182 (b)(1)(E):

> It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

54. Mr. Gruich is married to Ms. Gruich. Ms. Gruich accompanied Mr. Gruich to the Dolphins/Saints game and Mr. Gruich assisted Ms. Gruich while they were at the game.

55. Mr. Gruich has suffered a specific, direct, and separate injury from the injury suffered by Ms. Gruich.

56. Mr. Gruich is a self-described "Miami Dolphins fanatic." Mr. Gruich wanted to attend the once-every-eight-year Dolphins/Saints game at the Superdome with his wife.

57. Due to Defendant's discriminatory actions, Mr. Gruich was prohibited from returning to the game after accompanying his wife when she went to relieve her service dog.

58. Mr. Gruich pleaded with Defendant's employees/contractors to be able to reenter the Superdome to retrieve their personal items, yet Defendant's employees/contractors refused to let Mr. Gruich or Ms. Gruich reenter.

59. To add insult to injury, Mr. Gruich was physically threatened by one of Defendant's employees/contractors when an employee/contactor removed his shirt and approached Mr. Gruich in a menacing manner.

60. Mr. Gruich was directly discriminated against as a result of his known association with Ms. Gruich. Mr. Gruich was unable to enjoy the Dolphins/Saints game with his wife due to Defendant's discriminatory actions.

61. When the Plaintiffs were prohibited from reentering the Superdome after relieving Ms. Gruich's service dog, Mr. Gruich experienced frustration, emotional distress, embarrassment, anxiety, and fear as a result of the discrimination.

62. Mr. Gruich has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Mr. Gruich is entitled to have his reasonable attorneys' fees, costs, and expenses paid by ASM pursuant to 42 U.S.C. § 12205.

## COUNT III: VIOLATIONS OF THE LOUISIANA STATUTES ON THE RIGHTS OF PERSONS WITH DISABILITIES

63. Plaintiffs repeats and realleges all preceding paragraphs in support of their claims.

64. At all times relevant to this action, the LSRPD was in full force and effect and applied to Defendant's conduct.

65. The LSRPD states, "Every person with a disability shall be entitled to full and equal accommodations, advantages, facilities, and privileges in … (3) places of public accommodation."  Moreover, "Every person with a disability may be accompanied by a service dog, especially trained to aid such person, in any of the places" articulated therein, including places of public accommodation.  La. R.S. § 46:1953(B)(3) and (C).

66. Moreover, the LSRPD provides that, once a violation has occurred, the violator "shall pay for actual damages for any economic loss to *any person* aggrieved thereby, to be recovered in any court of competent jurisdiction in the parish where such offense was committed or where the aggrieved person resides." *See* La. R.S. § 46:1956(C).

67. At all times relevant to this action, the LSRPD, at La. R.S. § 46:1952(3), incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

68. At all times relevant to this action, Ms. Gruich had substantial limitations to the major life activities of hearing and seeing, within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of the LSRPD, La. R.S. § 46:1952(3).

69. At all times relevant to this action, Defendant was a place of public accommodation within the meaning of the LSRPD.

70. A "Violation of Rights" pursuant to the LSRPD includes "any … agent … or employee of any … corporation who withholds, denies, deprives …; [or] intimidates … a person with a disability … for exercising his right to be admitted to or enjoy the places and facilities provided in this Chapter; or otherwise interferes with the rights of a person with a disability under this Chapter …" La. R.S. § 46:1956(A).

71. Defendant's employees and/or agents withheld, denied, or otherwise deprived Ms. Gruich access to the Superdome after she attempted to exercise her right to reenter the Superdome after taking it outside so it could relieve itself.

72. Plaintiffs were aggrieved by Defendant's violation of the LSRPD because they were unable to enter a place of public accommodation, they were unable to finish the sports game they were enjoying, they were humiliated by Defendant's conduct, they were physically threatened, and they were unable to retrieve their personal items.

73. The LSRPD provides that an individual with a disability who rights are violated can recover actual damages. La. R.S. § 46:1956(C). Plaintiffs pray for actual damages for the invasion of their civil rights, emotional and mental distress, segregation, upset, anxiety, and social exclusion.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against ASM, and request the following declaratory and injunctive relief, compensatory damages, and fees and costs:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's actions subjected Ms. Gruich to unlawful discrimination in violation of Title III of the ADA and the LSRPD;

B. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's actions subjected Mr. Gruich to unlawful discrimination in violation of Title III of the ADA;

C. That this Court enter an Order directing Defendant to alter its policies, practices, and/or procedures to make the Property accessible to and useable by individuals with a

disability who rely on service animals to the full extent required by the ADA and the LSRPD;

D. Award to Plaintiffs:

i. Compensatory and nominal damages pursuant to the LSRPD;

ii. Actual damages for any economic loss pursuant to the LSRPD;

iii. Reasonable costs and attorneys' fees pursuant to Title III of the ADA and the LSRPD;

iv. Interest on all amounts at the highest rates and from the earliest dates allowed by law; and

v. Any and all other relief that this Court finds necessary and appropriate.

Respectfully Submitted,

/s/ Andrew D. Bizer
ANDREW D. BIZER

**BIZER & DEREUS, LLC**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Emily Westermeier, Esq. (LA # 36294)
ewest@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996